IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TONY CASTLEBERG | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-09-CV-1354-M-BD |
| | § | |
| CITY OF DALLAS | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant City of Dallas ("the City") has filed a motion for summary judgment in this race

discrimination and retaliation case brought under Title VII of the Civil Rights Act of 1964 ("Title

VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and the Texas Commission on Human Rights Act

("TCHRA"), Tex. Lab. Code Ann. § 21.001, *et seq.*, and for civil rights violations under 42 U.S.C.

§ 1983. For the reasons stated herein, the motion should be granted in part and denied in part.

I.

In September 2008, Plaintiff Tony Castleberg, a Caucasian and a 12-year veteran of the

Dallas Police Department ("DPD"), applied for a transfer to the mid-level enforcement unit of the

DPD Narcotics Division.[1] (*See* Plf. Am. Compl. at 2, ¶ 6; Def. MSJ App. at 44, 54, 212-13). As a

senior corporal with four years experience as a narcotics street squad detective, plaintiff met the

basic qualifications to fill one of three vacancies in the mid-level squad supervised by Sergeant Gerry

---

[1] The mid-level enforcement unit targets distributors who supply drugs to street level dealers. (*See* Def. MSJ App. at 1007-08, ¶ 3). By contrast, the narcotics street squad where plaintiff worked targets street level dealers and drug houses. (*Id.*).

Westry. (*See* Plf. Am. Compl. at 2, ¶ 6; Def. MSJ App. at 543).[2] In addition to his field experience,

plaintiff alleges that he consistently scored well on performance reviews, had a spotless disciplinary

record, and received numerous departmental awards and commendations. (*See* Plf. Am. Comp. at

2-3, ¶¶ 6-7; Def. MSJ App. at 204). Despite his qualifications, plaintiff was not selected to fill any

of the three vacant mid-level detective positions in Westry's squad. (*See* Def. MSJ App. at 276).

Instead, Westry, in consultation with two other police sergeants who interviewed applicants, selected

minority candidates. (*See id.* at 274-77 & 1044, ¶ 5). Offers were accepted by Mark Rangel, a

Hispanic, and Harry Haynes, an African-American. (*Id.* at 276 & 1044, ¶ 5). A third position was

offered to Josie McEntire, a Native-American, but she declined the offer and was replaced by

Anthony Hernandez, a Hispanic. (*Id.* at 276, 280 & 1044, ¶ 5).

Upon learning that he had not been selected for one of the mid-level detective positions,

plaintiff filed a formal grievance with DPD. (*Id.* at 203-08). In his grievance, plaintiff alleged that

he was discriminated against because of his race. (*Id.*). The grievance was investigated by

Lieutenant Andrew Acord, acting Deputy Chief of the Narcotics Division, who interviewed Westry

and others. (*Id.* at 1008, ¶¶ 4-5). Notes taken by Acord during these interviews suggest that racial

diversity played at least some role in the hiring decision. In his notes, Acord wrote that Westry did

not choose a Caucasian "because [of] lack of diversity in [Narcotics] Division." (*Id.* at 818). Acord's

notes also indicate that Sergeant Eddie Fuller, another member of the interview panel, supported the

decision to select Harry Haynes "because [of] diversity" and the fact that Haynes "does not create

controversy." (*Id.* at 816). In a sworn affidavit, Acord elaborated on the results of his investigation:

---

[2] Plaintiff worked under Westry as a street squad detective before Westry was reassigned to the mid-level enforcement unit in June 2007. (*See* Def. MSJ App. at 1043-44, ¶¶ 2, 5).

The whole issue in this grievance was whether Sgt. Westry did not pick Sr. Corporal Castleberg because he was Caucasian, so I asked Sgt. Westry if he had not selected Caucasians because of diversity reasons. Sgt. Westry told me that the officers he chose during this selection process were based on the following qualities[:] leadership skills, ability to buy larger amount of drugs, willingness to learn, being team players and bringing diversity to his squad. Sgt. Westry told me he did not pick Sr. Corporal Castleberg because he was not a team player. Sgt. Westry told me both he and Sgt. Fuller felt Sr. Corporal Haynes was willing to learn and would put him in the top five over Sr. Corporal Castleberg. Further that Sr. Corporal Haynes would be a good undercover detective and would fit into the squad well. Sgt. Westry also told me that Sr. Corporal Castleberg attempted to influence him during the process and even apologized to the interview panel for trying to influence them.

(*Id.* at 1008-09, ¶ 5). Ultimately, Acord was unable to substantiate plaintiff's grievance. (*Id.* at 1008, ¶ 4). Plaintiff appealed that decision to Assistant Chief Charles Cato, who upheld the dismissal of the grievance and later opined that a selection based on race would not constitute discrimination "because in the narcotics division, you need a diverse group of people to be able to go into the places they need to go . . . So I believe it's incumbent upon them to pick people who can do the job and who can fit into those areas that they need to go." (*Id.* at 677-78, 683).

On February 26, 2009, plaintiff filed a formal charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 53-54, 201). After the EEOC issued a right-to-sue letter, plaintiff sued the City in federal district court for race discrimination under Title VII and the TCHRA, and for procedural and substantive due process violations under 42 U.S.C. § 1983. Plaintiff subsequently amended his complaint to include a claim that he was transferred from the narcotics street squad to the Southwest Patrol Division in retaliation for filing a grievance, an EEOC charge, and this lawsuit. Defendant now moves for summary judgment as to all claims and

causes of action.[3] The issues have been fully briefed by the parties and the motion is ripe for determination.

## II.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). This may be done by "pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Id., quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.), *cert. denied*, 113 S.Ct. 98 (1992). By contrast, a movant who bears the burden of proof at trial must establish "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

---

[3] Although defendant does not specifically move for summary judgment with respect to plaintiff's claims under the TCHRA, such claims are subject to the same legal standards and require the same proof as plaintiff's claims for race discrimination and retaliation under Title VII. *See Evans v. City of Houston*, 246 F.3d 344, 349 (5th Cir. 2001) (race discrimination claims under Title VII and TCHRA are "evaluated within the same analytical framework"); *Earle v. Aramark Corp.*, No. 3-03-CV-2960-K, 2006 WL 832507 at *2 (N.D. Tex. Mar. 29, 2006), *aff'd*, 247 Fed.Appx. 519 (5th Cir. Sep. 12, 2007) (same as to retaliation claims under Title VII and TCHRA).

A.

Defendant contends that the decision not to offer plaintiff a transfer to the mid-level enforcement unit was not an "adverse employment action" and, in any event, plaintiff cannot show that the legitimate, non-discriminatory reasons articulated by Westry for his decision were pretextual or that race was a motivating factor for the decision.

1.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" *See* 42 U.S.C. § 2000e-2(a)(1). To prevail on his discrimination claim, plaintiff must present direct or circumstantial evidence that his race was a motivating factor for an adverse employment action. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 2572 (2003). If an inference is required for the evidence to be probative as to discriminatory animus, the evidence is circumstantial, not direct. *Id.* at 897-98; *see also Penalver v. Resource Corp. of America*, No. 3-10-CV-0280-D, 2011 WL 1885988 at *1 (N.D. Tex. May 18, 2011).

A circumstantial case of race discrimination may be proved by using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a *prima facie* case of discrimination, which "creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

Once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). This burden "is only one of production, not persuasion, involving no credibility assessments." *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the defendant meets its burden of production, the *prima facie* case disappears and the plaintiff must offer sufficient evidence to create a genuine issue of material fact on the ultimate issue of intentional discrimination. *See Evans v. City of Bishop*, 238 F.3d 586, 590 (5th Cir. 2000). A plaintiff may satisfy the final step of the *McDonnell Douglas* burden-shifting analysis by offering evidence of either pretext or mixed motives. *See Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004). Under the pretext alternative, the plaintiff must show that the defendant's reason is not true, "but is instead a pretext for discrimination." *Id.* Under the mixed-motives alternative, the plaintiff must prove that "the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.* If the plaintiff elects to proceed under the second alternative and offers sufficient evidence that discrimination was a motivating factor in the employment decision, the burden shifts to the defendant to prove that it would have taken the same action despite any discriminatory animus. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005).

2.

Defendant contends that plaintiff did not suffer an adverse employment action within the meaning of Title VII. "[A]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Mitchell v. Snow*, 326

Fed.Appx. 852, 854, 2009 WL 1687798 at *1 (5th Cir. Jun. 17, 2009), *quoting McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). An employment action that "does not affect job duties, compensation, or benefits" is not adverse for purposes of Title VII. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.), *cert. denied sub nom. Hernandez v. Crawford Bldg. Material Co.*, 124 S.Ct. 82 (2003). While the denial of a "purely lateral transfer" is not an adverse employment action, *see, e.g. Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999), a decision not to transfer an employee may be actionable if it amounts to the "objective equivalent" of the denial of a promotion -- that is, if the position sought was "objectively better" than the position originally held. *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007). In determining whether a position is "objectively better," the court may consider a number of factors, including whether the position: (1) provides an increase in compensation or other tangible benefits, (2) entails greater responsibility or improved job duties, (3) requires greater skill, education, or experience, (4) is obtained through a complex, competitive selection process, or (5) is otherwise more prestigious. *Id.* This is an objective inquiry. "[N]either the employee's subjective impressions as to the desirability of the new position nor the employee's idiosyncratic reasons for preferring the new position are sufficient to render the position a promotion." *Id.*

Viewed in the light most favorable to plaintiff, the summary judgment evidence supports an inference that the position of mid-level detective is "objectively better" than the position of street squad detective in terms of earning potential, job duties, and prestige. According to plaintiff:

> Midlevel Enforcement in Narcotics Division is an especially coveted
> position because of the many perks that go with that position. The
> position can only be held by a Detective, unlike patrol where a rookie
> to a 30 year veteran can work the same job. Midlevel Enforcement
> also can include take-home vehicles, which saves the officers money

in gas and repairs on their personal vehicle. Midlevel works closely with Federal agencies and these detectives are given first opportunity to work in a Federal task force, which includes Federal overtime monies. Midlevel Detectives get more experience, training and are able to work bigger, more involved cases. Midlevel is not an entry level position but a position that is held by knowledgeable and experienced detectives.

(Plf. MSJ Resp. App. at 1, ¶ 3). Indeed, defendant's own evidence shows that mid-level detectives work on more high profile cases by targeting drug distributors rather than street level dealers. (*See* Def. MSJ App. at 1007-08, ¶ 3). Many of the candidates interviewed for that position testified that they were attracted to the job because of its heightened complexity. (*See, e.g. id.* at 386, 396, 406, 411, 416, 421, 426, 481). Sergeant Daniel Avalos, a member of the interview panel, characterized the mid-level enforcement unit as an "upper level" squad, and described the posting for such a position as "an opportunity for street squad detectives to gain enforcement positions[.]" (*See id.* at 828). The selection process for Westry's mid-level narcotics squad was involved and competitive. Ten applicants, all of whom had attained the rank of senior corporal, were interviewed for only three vacancies. (*Id.* at 237; Plf. MSJ Resp. App. at 1, ¶ 2). At the very least, a fact question exists as to whether the decision not to offer plaintiff a transfer to the mid-level enforcement unit constituted an adverse employment action. *See, e.g. Lewallen v. City of Beaumont*, 394 Fed.Appx. 38, 43, 2010 WL 3303756 at *4 (5th Cir. Aug. 23, 2010) (jury could reasonably find that denial of transfer from specialist to detective effectively deprived plaintiff of a promotion where evidence revealed that detective position was more intellectually challenging, had better benefits and work hours, and was widely viewed as more prestigious); *Alvarado*, 492 F.3d at 615 (genuine issue of material fact existed as to whether plaintiff's non-selection for transfer to an elite police unit was an adverse

employment action even if the new position did not involve an increase in pay or other tangible benefits).

3.

Alternatively, defendant contends that Westry had legitimate, non-discriminatory reasons for not selecting plaintiff for the mid-level detective position. Among the factors considered by Westry for his hiring decision were "leadership skills, ability to buy larger amounts of drugs, willingness to learn, being team players, and bringing diversity to the squad and the Narcotics Division." (*See* Def. MSJ App. at 1044, ¶ 5). At his deposition, Westry testified that:

- plaintiff could not get along with his co-workers, and Westry "didn't want to bring that into my current squad;"

- plaintiff did not want to train new detectives that came into the Narcotics Division;

- plaintiff had said in the past that he could not work with minority officers;

- two other members of the interview panel did not recommend plaintiff; and

- plaintiff complained to his supervisors that he could not work with his current squad, and told Westry that he "needed to get a white person for the squad for him to work with."

(*See id.* at 340, 347, 353-54). Even if these explanations constitute legitimate, non-discriminatory reasons for not selecting plaintiff, there is direct evidence in the summary judgment record that Westry was motivated, at least in part, by racial considerations. Westry told Lieutenant Acord that he did not choose a Caucasian "because [of] lack of diversity in [Narcotics] Division." (*Id.* at 818). Similar statements are made by Westry in his affidavit. (*See id.* at 1044, ¶ 5). In an attempt to explain his deposition testimony that the Narcotics Division is "not diverse enough," Westry states

that diversity means "considering the attributes of individuals which might include gender, *race*, and age." (*Id.* at 1045, ¶ 9) (emphasis added).

Where, as here, the plaintiff presents credible direct evidence that discrimination motivated or was a substantial factor in the adverse employment action, the burden shifts to the defendant to show that, regardless of discrimination, the same decision would have been made. *See Reilly v. TXU Corp.*, 271 Fed.Appx. 375, 379, 2008 WL 724025 at *3 (5th Cir. Mar. 17, 2008), *citing Jones v. Robinson Prop. Group*, 427 F.3d 987, 992 (5th Cir. 2005). "The employer's burden on this score is effectively that of proving an affirmative defense." *Machinchick*, 398 F.3d at 355. Defendant has failed to satisfy this burden of proof at the summary judgment stage. Neither the subjective beliefs of other members of the interview panel that race was not a factor in Westry's decision not to select plaintiff for the mid-level detective position, (*see id.* at 988, ¶ 6 & 999, ¶ 5), nor the negative opinions of plaintiff held by police sergeants other than Westry, (*see id.* at 988-89, ¶ 7; 996-97, ¶¶ 3-4; 1002, ¶ 3; 1004, ¶¶ 3-4; 1005, ¶ 3; 1022-23, ¶ 5), establish "beyond peradventure" that the same decision would have been made despite plaintiff's race. Plaintiff should be permitted to proceed to trial on his Title VII race discrimination claim.

B.

Defendant also contends that plaintiff cannot establish a *prima facie* case of retaliation under Title VII. To establish a *prima facie* case of retaliation, plaintiff must show: (1) that he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 556-57. As to the third element, the initial requirement that plaintiff show a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for"

causation that a jury must find. *See Penalver*, 2011 WL 1885988 at *5 (citing cases). "Close timing between an employee's protected activity and an adverse action against [him] may provide the 'causal connection' required to make out a prima facie case of retaliation." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001), *quoting Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

1.

Defendant first argues that plaintiff cannot establish a causal link between a protected activity and an adverse employment action because he was transferred to the Southwest Patrol Division on June 30, 2009 -- *before* he filed the instant lawsuit on July 17, 2009. However, the filing of the federal court action is not the only protected activity alleged by plaintiff in his amended complaint. Plaintiff also contends that he was retaliated against for filing a grievance with the City and a charge of discrimination with the EEOC. (*See* Plf. Am. Compl. at 6, ¶ 19). The filing of an EEOC charge is protected activity within the meaning of Title VII. *See Garza v. Laredo Indep. Sch. Dist*, 309 Fed.Appx. 806, 810, 2009 WL 221258 at *4 (5th Cir. Jan. 30, 2009). Because that charge was filed on February 26, 2009 -- just four months before plaintiff was transferred to the Southwest Patrol Division -- there is a sufficient causal link between a protected activity and an adverse employment action for purposes of establishing a *prima facie* case of retaliation. *See Evans*, 246 F.3d at 352, *citing Weeks v. NationsBank, N.A.*, No. 3-98-CV-1352-M, 2000 WL 341257 at *3 (N.D. Tex. Mar. 30, 2000) (noting that time lapse of up to four months has been found to satisfy the causal link requirement for summary judgment purposes).[4]

---

[4] In view of the disposition of this issue, the court need not decide whether the nine-month period between the time plaintiff filed a grievance with the City and his transfer to the Southwest Patrol Division is too remote to establish a causal connection for purposes of proving a *prima facie* case of retaliation.

2.

Next, defendant contends that plaintiff cannot show that "but for" his protected activity, he would not have been transferred to the Southwest Patrol Division. In support of this argument, defendant relies on a Standard Operating Procedure ("SOP") adopted by the DPD Narcotics Division that limits street squad assignments for detectives and police officers to five consecutive years. (*See* Def. MSJ App. at 1038, ¶ 3 & 1041). Plaintiff was reassigned to the Southwest Patrol Division in June 2009 after he completed five years of service as a narcotics street squad detective. (*Id.* at 1038, ¶ 5). Although the SOP permits a Division Commander to extend this five-year limitation on a case-by-case basis for a period of up to one year, Deputy Chief Jan Easterling, Commander of the Narcotics Division, testified that no one requested a one-year extension for plaintiff. (*Id.*). Moreover, Easterling said that she has never granted an extension to a street squad detective after the detective reached the five-year limit. (*Id.* at 1038-39, ¶ 5). In fact, two other detectives -- Damaso Colon, a Hispanic, and James Dupuch, an African-American -- were reassigned to different divisions after completing five consecutive years of service in June 2009. (*Id.*). Plaintiff counters that no narcotics detective has been transferred before or since only because of the five-year limitation, which is openly referred to as the "Castleberg rule." (*See* Plf. MSJ Resp. App. at 2, ¶ 4).

The court initially observes that the "but for" causation requirement applies only to the "ultimate Title VII burden" at the last step of the *McDonnell Douglas* analysis. *See Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999), *citing Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). Whether plaintiff can prove a causal link between a protected activity and an adverse employment action for purposes of establishing a *prima facie* case of retaliation is "much less stringent." *See Penalver*, 2011 WL 1885988 at *5, *citing Montemayor v.*

*City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). In any event, plaintiff's testimony that he

was singled out under the so-called "Castleberg rule" is sufficient for a jury to find that defendant's

stated reason for transferring him to the Southwest Patrol Division was a pretext for retaliation. *See*

*Vance v. Union Planters Corp.*, 209 F.3d 438, 442 & n.3 (5th Cir. 2000) (noting that plaintiff may

prove intentional discrimination solely through his own testimony). Without suggesting a view of

whether plaintiff can convince a jury that the five-year rule was applied only to him, the court

determines that plaintiff has adduced enough evidence to survive summary judgment as to his

retaliation claim.[5]

## C.

The court reaches a different conclusion with respect to plaintiff's claim that defendant

violated his Fourteenth Amendment right to procedural and substantive due process. As grounds

for dismissal, defendant contends that plaintiff has failed to identify the violation of a cognizable

property interest in his employment, or the violation of any other right guaranteed under federal law.

Plaintiff does not address these arguments in his summary judgment response. Nor does plaintiff

identify any evidence in the record that creates a genuine issue of material fact with respect to his

section 1983 claim. As a result, the claim is deemed abandoned. *See Bardwell v. Bank of New York*,

No. 3-08-CV-1119-K, 2010 WL 3446915 at *3 (N.D. Tex. Aug. 31, 2010) (citing cases) (plaintiff

abandoned claim by failing to contest grounds for dismissal raised by defendant in motion for

summary judgment).

---

[5] Defendant also argues that two other events discussed by plaintiff in his complaint -- the failure to properly investigate an incident where a noose was placed on his car and his inability to transfer to another detective position within DPD -- cannot serve as the basis for a retaliation claim under Title VII. (*See* Def. MSJ Br. at 21-22). However, it is clear from plaintiff's complaint and his responsive briefing that those events are not part of his retaliation claim.

## RECOMMENDATION

Defendant's motion for summary judgment [Doc. #25] should be granted in part and denied in part. The motion should be granted with respect to plaintiff's section 1983 due process claim. In all other respects, the motion should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:  June 3, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE